UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10830-GAO

In re ELIZABETH A. DUNN,
Debtor.

JAMES N. ELLIS, JR., MALCOLM L. BURDINE,
and GILLIAN SCHILLER,
Appellants,

v.

ELIZABETH A. DUNN,
Appellee.

MEMORANDUM AND ORDER
March 31, 2005

O'TOOLE, D.J.

Appellants James N. Ellis, Jr., Malcolm L. Burdine, and Gillian Schiller appeal from a grant of summary judgment and an award of damages by the Bankruptcy Court for the District of Massachusetts in favor of appellee Elizabeth A. Dunn. The bankruptcy court held the appellants in contempt of court for instituting and continuing a civil action against Dunn, a debtor who had been discharged in bankruptcy, in violation of a discharge injunction imposed pursuant to 11 U.S.C. § 524. After careful review of the parties' briefs and accompanying exhibits, and after oral argument, the bankruptcy court's grant of summary judgment on the complaint for contempt is reversed.

**I.   Summary of Facts**

In 1995, Dunn hired Ellis's law firm, Ellis & Ellis, to represent her in a workers' compensation case. Following a conciliation proceeding, Dunn's claim was denied and Ellis & Ellis filed an appeal to an administrative judge on her behalf. The appeal was still pending when, in

February 1997, Dunn filed a voluntary Chapter 7 petition in the bankruptcy court. She did not list her then pending workers' compensation claim as an asset in her bankruptcy schedules, but she apparently did disclose the claim as a "lawsuit[] involving non-creditors" in her Statement of Financial Affairs. An administrative judge eventually rejected Dunn's workers' compensation claim.

Dunn did not list Ellis or his firm as an actual or potential creditor in her bankruptcy papers. Dunn contends that within a couple of weeks after filing her bankruptcy petition, she notified Ellis & Ellis of her bankruptcy filing by calling the firm and sending a letter complaining that Ellis's failure to settle her workers' compensation claim had forced her to file a bankruptcy petition. Ellis denies ever receiving such communications from Dunn.

In May 1997, Dunn was given an order of discharge by the bankruptcy court releasing her from "all dischargeable debts" and enjoining "all creditors whose debts are discharged by this order . . . from instituting or continuing any action or employing any process or engaging in any act to collect such debts as personal liabilities of [Dunn]."[1] Ellis was not served with the

---

[1] The full text of the discharge order is as follows:

It appearing that a petition commencing a case under title 11, United States Code, was filed by or against the person named above on 2/12/97, and that an order for relief was entered under chapter 7 and that no complaint objecting to the discharge of the debtor was filed within the time fixed by the court [or that a complaint objecting to discharge of the debtor was filed and, after due notice and hearing, was not sustained]:

IT IS ORDERED THAT:

1. The above-named debtor is released from all dischargeable debts.
2. Any judgment heretofore or hereafter obtained in any court other than this court is null and void as a determination of the personal liability of the debtor with respect to any of the following:
(a) debts dischargeable under 11 U.S.C. Sec. 523;
(b) unless heretofore or hereafter determined by order of this court to be nondischargeable, debts alleged to be excepted from discharge under clauses (2), (4), (6), and (15) of 11 U.S.C. Sec. 523(a);
(c) debts determined by this court to be discharged.

2

discharge order in the course of proceedings in the bankruptcy case. Dunn's case was closed in August 1997.

In June 2000, Ellis, represented by Burdine, commenced an action against Dunn in the Westborough Division of the Massachusetts District Court Department of the Trial Court to collect expenses his firm had incurred in prosecuting her workers' compensation claim. Dunn did not list her discharge as an affirmative defense in her answer to Ellis's complaint, but in her answers to interrogatories she stated that she had "gone bankrupt as a result of [Ellis's] failure to settle [her] case." Dunn Aff. ¶ 10. At some time before the trial in the collection action, Ellis received notice of the "possible existence" of Dunn's bankruptcy discharge. App. at 48. During the trial, Burdine received notice of the "possible existence" of Dunn's bankruptcy discharge. Id.[2]

After a bench trial in the Westborough District Court, the judge found that Dunn did not owe any money to Ellis personally because he had not shown that he had any legal rights to sums that Dunn may have owed to Ellis & Ellis. The judge also found that Ellis "had received actual notice verbally and in writing from [Dunn] that the discharge entered on her 'no asset' case." Id. at 86. He further stated that Dunn "may mark this matter for further proceedings regarding her claim for damages for ignoring her claim of discharge in bankruptcy." Id. at 87. The judge subsequently denied Ellis's post-trial motions for a new trial and relief from judgment, as well as a motion requesting the judge recuse himself from deciding the post-trial motions because of his purported

---

3. All creditors whose debts are discharged by this order and all creditors whose judgments are declared null and void by paragraph 2 above are enjoined from instituting or continuing any action or employing any process or engaging in any act to collect such debts as personal liabilities of the above-named debtor.
App. at 78. ( "App." citations are to the Appendix to the Brief for Appellants James N. Ellis, Jr., Malcolm Burdine, and Gillian Schiller (Docket No. 8)).

[2] In their reply brief, however, the appellants say that "Ellis was presented by [Dunn] with a copy of the discharge order at the outset of the state trial." Appellants' Reply Br. at 1 (Docket No. 12).

bias. Thereafter, Ellis, now represented by Schiller, appealed the denial of his post-trial motion for recusal only. The Appellate Division for the Western District affirmed the denial of that motion. During the pendency of the appeal, Schiller received notice of the "possible existence" of Dunn's bankruptcy discharge. Id. at 49.

In late 2002, Dunn reopened her bankruptcy case and filed an adversary proceeding for contempt against Ellis, Burdine, and Schiller for attempting to collect debts from her in violation of the discharge injunction imposed pursuant to 11 U.S.C. § 524.[3] On October 3, 2003, the bankruptcy court granted summary judgment for Dunn finding the appellants in civil contempt and scheduled a hearing on the assessment of damages. On February 6, 2004, Ellis filed a motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b). On March 12, 2004, following an evidentiary hearing on the assessment of damages, the bankruptcy court denied Ellis's Rule 60 motion and awarded Dunn damages of $10,407.75 (in varying amounts against each defendant). This appeal followed.

## II. Discussion

### A. Issues Presented and Standard of Review

A district court has the jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy court. 28 U.S.C. § 158(a)(1). "An order granting summary judgment is a final order for purposes of appeal." Wicheff v. Baumgart (In re Wicheff), 215 B.R. 839, 840 (B.A.P. 6th Cir. 1998). But a contempt order is not final and appealable if it does not impose sanctions. Id. at 843. Here, the bankruptcy court's October 3, 2003 order granted summary judgment on an adversary

---

[3] See 11 U.S.C. § 524(a) ("A discharge in a case under this title . . . (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."); see also 11 U.S.C. § 727(b) ("Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter.").

4

complaint for contempt of court without imposing sanctions. The March 12, 2004 order resolved Ellis's Rule 60 motion and imposed sanctions for the earlier finding of contempt.

The appellants' notices of appeal specifically indicate that they are appealing the bankruptcy judge's March 12, 2004 order. However, in their briefs, the appellants do not address the judge's rulings on either Ellis's Rule 60 motion or the calculation of damages. Rather, the appellants seek reversal of the judge's October 3, 2003 finding of contempt on Dunn's motion for summary judgment. I construe the present appeal to be a challenge to both the bankruptcy judge's October 3, 2003 order granting summary judgment for Dunn and its March 12, 2004 imposition of sanctions pursuant to that order. Because the appellants do not address the bankruptcy judge's rulings on Ellis's Rule 60 motion or the court's damages calculation, I do not address those issues specifically.

The bankruptcy court's decision granting summary judgment for Dunn is reviewed <u>de</u> <u>novo</u>. <u>Palmacci v. Umpierrez</u>, 121 F.3d 781, 785 (1st Cir. 1997); <u>Desmond v. Varrasso (In re Varrasso)</u>, 37 F.3d 760, 763 (1st Cir. 1994).

  B. <u>Contempt of the Discharge Injunction</u>

The appellants do not dispute that Ellis and Burdine had been informed of Dunn's bankruptcy discharge at least by the beginning of the trial in the Westborough District Court. Their argument is that knowledge of the <u>fact of the discharge</u> was insufficient under the circumstances to give them sufficient notice of the <u>scope of the discharge injunction</u>, and without undisputed proof that they were on notice that the injunction prohibited the Westborough District Court suit, it was error for the bankruptcy judge to find them in contempt of the injunction on Dunn's motion for summary judgment. I agree.

The bankruptcy judge concluded, in substance, that knowledge of the fact of the discharge amounted to a kind of "inquiry notice" that imposed on the appellants the duty to learn the scope of

the order and, more particularly, the obligation – enforceable by contempt sanctions – to desist immediately from proceeding with the state court suit unless and until it was determined that the suit could be maintained without violating the injunction. This was error because it is inconsistent with settled principles governing the standards for proving civil contempt.

The First Circuit has summarized the principles governing proof of civil contempt as follows:

> [T]hose who would suffer penalties for disobedience must be aware not merely of an order's existence, but also of the fact that the order is directed at them. . . . We think it is beyond serious question that, as a necessary prelude to a finding of contempt, the putative contemnor should have reasonably definite advance notice that a court order applies to it.
> . . . .
> A court order, then, must not only be specific about what is to be done or avoided, but can only compel action from those who have adequate notice that they are within the order's ambit. For a party to be held in contempt, it must have violated a clear and unambiguous order that left no reasonable doubt as to what behavior was expected and who was expected to behave in the indicated fashion. In determining specificity, the party enjoined must be able to ascertain from the four corners of the order precisely what acts are forbidden.

Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 17 (1st Cir. 1991) (internal quotations and citations omitted). Furthermore, civil contempt must be proved by clear and convincing evidence. Id. at 16. This standard applies in the bankruptcy context as well as others. See American Chem. Works Co. v. Int'l Nickel, Inc. (In re American Chem. Works Co.), 235 B.R. 216, 220-21 (Bankr. D.R.I. 1999) (citing Langton v. Johnston, 928 F.2d 1206, 1220 (1st Cir. 1991)). See also, Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002); Koehler v. Grant, 213 B.R. 567, 570 (B.A.P. 8th Cir. 1997); Musslewhite v. O'Quinn (In re Musslewhite), 270 B.R. 72, 79 (Bankr. S.D. Tex. 2000).

The bankruptcy judge's grant of summary judgment was premised on the conclusion that the appellants' awareness of the discharge gave sufficiently specific content to the statutory discharge

6

injunction that violation of the injunction by prosecution of the civil action was punishable as a contempt.  She properly recognized that in cases involving violations of the automatic stay under 11 U.S.C. § 362, a creditor will be found to have willfully violated the stay if it is shown that he had knowledge of the stay and intended the actions which constituted the violation.  Fleet Mortgage Group, Inc. v. Kaneb, 196 F.3d 265, 269 (1st Cir. 1999).  In such cases it is possible to presume that the violation of the stay was deliberate if the creditor had actual notice of the automatic stay, see id., because the Section 362 stay automatically forbids all collection actions.  A creditor who receives actual notice of the stay necessarily knows it applies to him, so it is fair to conclude that any actions to press claims despite the stay were willfully undertaken.  See McMullen v. Sevigny (In re McMullen), 386 F.3d 320, 330 (1st Cir. 2004); Rijos v. Banco Bilbao Vizcaya (In re Rijos), 263 B.R. 382, 392 (B.A.P. 1st Cir. 2001).

The same standard may also be applied to violations of clear and unambiguous discharge orders that leave no reasonable doubt as to what behavior is expected and who is expected to behave in the indicated way.  See In re Perviz, 302 B.R. 357, 370 (Bankr. N.D. Ohio 2003); McDonald v. Norwest Fin., Inc. (In re McDonald), 265 B.R. 3, 9 (Bankr. D. Mass. 2001); Worthing v. Connecticut Nat'l Bank (In re Worthing), 24 B.R. 774, 777 (Bankr. D. Conn. 1982).  But if it is not clear whether the debtor's discharge affected a particular debt or a particular creditor, actual knowledge simply of the existence of that order by itself may not be sufficient to presume a deliberate violation of the order.

The discharge order at issue here did not release Dunn from <u>all</u> debts; it released her from all <u>dischargeable</u> debts. Some reference to the possible exceptions to discharge under 11 U.S.C. § 523 was therefore invited as necessary to understand the actual scope of the injunction. The appellants took the position that Ellis's claim against Dunn had not been discharged based on facts particular to Dunn's case. Unlike notice of the <u>universal</u> automatic stay during the pendency of the bankruptcy proceedings, knowledge of the discharge injunction in this case did not necessarily advise these appellants of the scope of the injunction. It is certainly possible that the appellants knew, or reasonably should have known, that the discharge injunction applied to them but chose to look the other way. It is also possible that they held an objectively reasonable belief that, for reasons specific to Dunn's bankruptcy case, the injunction did not apply to Ellis's claim.

The appellants argued two bases for concluding that the Ellis debt was not discharged so that the discharge injunction did not preclude Ellis's state court suit. First, they contended that Dunn's omission to schedule the debt improperly deprived Ellis of notice of the bankruptcy.[4] Second, they contended that Dunn had fraudulently concealed an asset by omitting the pending workers' compensation claim from her petition. The validity of either of these, and ultimately the

---

[4] It is true that in a Chapter 7 "no asset" case the lack of notice to unscheduled creditors (like Ellis) would not foreclose discharge of debts purportedly owed them, and thus notice that a given Chapter 7 case was a "no asset" case would have told Ellis (and the other appellants) that it did not matter that he had not been listed as a creditor and that he would be bound by the discharge injunction. However, it is not established in this record that the fact that Dunn's was a "no asset" Chapter 7 bankruptcy was communicated to the appellants. The state district court judge's finding that Ellis received notice that a discharge entered in Dunn's "no asset" case, App. at 86, is ambiguous. It is not clear whether the judge was saying that Ellis knew Dunn's was a "no asset" bankruptcy, or simply that Ellis had notice of the discharge, which had entered in Dunn's case, which was a "no asset" case. The discharge order itself made no mention of the "no asset" point.

8

determination of the willfulness of any violation of the discharge injunction, depended on ascertainment of the underlying factual circumstances. The summary judgment record, at least so far as it is reconstructed for purposes of this appeal, does not indicate an absence of a factual dispute on these issues.[5] The record discloses a dispute about what information the appellants had about Dunn's discharge, and specifically the scope of the injunction, as well as perhaps other details about the Dunn bankruptcy. In effect, the bankruptcy judge employed a presumption that shifted to the appellants the burden of proving they were not in contempt. This was an error. With factual ambiguity present in the summary judgment record, Dunn's motion for summary judgment of contempt should not have been granted. See Project B.A.S.I.C., 947 F.2d at 16, 18.

**III.   Conclusion**

The bankruptcy court's October 3, 2003 order granting summary judgment for Dunn is REVERSED, and the March 12, 2004 imposition of sanctions pursuant to that order is VACATED. The matter is remanded to the bankruptcy court for further proceedings on the complaint for contempt.

It is SO ORDERED.

March 31, 2005                              \s\ George A. O'Toole, Jr.
DATE                                        DISTRICT JUDGE

---

[5] The bankruptcy judge may have regarded the dischargeability of Ellis's claim as having been resolved in favor of discharge by the state court trial so that the appellants are foreclosed by the doctrine of issue preclusion from raising the question in this adversary proceeding. The District Court Appellate Division understood the judge to have adjudicated only that Ellis had failed to prove that Dunn was indebted to him. The appellate court specifically noted, "We also observe that the judge did decide the case without ever reaching the issue of Ms. Dunn's discharge in bankruptcy." Ellis v. Dunn, No. 02 WAD 015, 016, 2003 WL 21152977, at *2 (Mass. App. Div. May 9, 2003).